426 P.2d 567

Victor Nye WILSON, Claimant-Respondent,

v.

GARDNER ASSOCIATED, INC., and Truck
Insurance Exchange, Defend-
ants-Appellants.

No. 9802.

Supreme Court of Idaho.

April 12, 1967.

Elam, Burke, Jeppesen & Evans, Boise, for appellants.

Coughlan & Imhoff, Boise, for respondent.

McFADDEN, Justice.

Victor Nye Wilson, claimant-respondent, was employed as an equipment operator by appellant, Gardner Associated, Inc., insured by appellant, Truck Insurance Exchange. Wilson, after being injured July 20, 1965, in a fall from an employer-owned truck, filed a claim for workmen's compensation benefits with the Industrial Accident Board. Later he filed with the board a petition for hearing, alleging the accident and injury; that he was totally disabled for work from July 20, 1965, to October 14, 1965, the date of his petition, and would continue so disabled for an undetermined time. By its answer, appellants generally denied the allegations of the petition and affirmatively alleged that claimant's disability, if any, resulted from a prior automobile accident wholly unrelated to his employment.

The board heard the petition in November 1965. Following presentation of the claimant's testimony and that of Dr. Gardner, an orthopedic specialist who attended claimant and who was called as a witness by appellants, the board announced:

"Based on his testimony [Dr. Gardner's] the Board is disposed to enter an interim order requiring the Defendants to pay all medical expenses to date. * * *. We are also disposed to order you to pay total temporary disability compensation from the time of the accident to date and to continue thereafter

until the further order of the Board. * * *."

Later a formal interim order was entered directing the defendants to pay all of claimant's medical bills to date and total temporary disability compensation from July 20, 1965, "until such time as the claimant is surgically healed." The order contemplated further proceedings to determine whether Wilson suffered any partial permanent disability. Appellants have appealed from this order.

Appellants claim the board erred in its order in failing to apportion the temporary total disability and claimant's hospital, surgical and medical expenses as between his injuries sustained from the fall from his truck and his pre-existing infirmity.

At the hearing claimant testified that he had suffered a broken right hip in an automobile accident in California in 1961 and did not attempt to return to work until he came to Idaho in the summer of 1964, when he went to work for Gardner Associated, Inc., as a truck driver. Following the 1961 accident, by operative procedure, claimant's femur and femur head were strengthened by two pins. This operation was not wholly successful, because claimant re-entered the hospital while he was in California, for removal of a pin that had worked out. Wilson did not see any doctor following the removal of the pin until after the injury in 1965.

As a result of the California accident, Wilson's right leg was three to four inches shorter than his left leg. X-rays of his right hip taken subsequent to the 1965 accident disclosed that the old fracture of the femur had never properly healed and that there was a displacement between the femur and its head, and that scar tissue held the femur in relationship to the head of the femur enabling claimant to move and work.

Even though claimant was suffering from this condition, he was able to work as a truck driver. On July 20, 1965, he was driving a watering truck for his employer. He fell out of the truck, and his right foot

caught between the brake pedal and clutch pedal of the truck. He fell to his knees and felt a "real sharp pain * * * high on the hip," but was able to get back into the truck. He reported to an inspector on the construction job, and left his work on the watering truck, but completed the day's work of an hour or two by driving a "tamper," a machine used to compact loose road material. After the shift he crawled to his vehicle and drove to consult a doctor in Rigby, who immediately advised him to go to the hospital in Idaho Falls for X-rays to assist in the diagnosis. He was in the hospital overnight and then brought to Boise for treatment by Dr. Gardner, an orthopedic specialist.

Dr. Gardner took X-rays of the hip and then placed claimant in traction for over a month, which was ineffective in the attempt to re-align the old separation. Subsequently Dr. Gardner performed an osteotomy, cutting the femur, and reattaching it in a slightly offset position employing a pin to hold it in place, together with a plate and other pins. The head of the femur was still left separated from the femur itself. The joint was not fused, which would have rendered it immobile. Dr. Gardner stated that the right leg would continue to be about two inches shorter, even following the surgery. In response to questions by a member of the board, Dr. Gardner testified that the surgery was intended to decrease pain and maintain motion in spite of the degeneration of the femoral head. The doctor diagnosed the cause of claimant's pain as a strain or sprain tearing loose the old scar tissue which had been holding the joint in position and enabling claimant to walk. Dr. Gardner further stated that the operation was necessitated by the claimant's pain and, considering the prior history of the hip area, the pain would eventually have become so acute as to have required remedial attention anyway. According to his testimony, he could not give a date as to when such eventuality would have come to pass, dependent in large part upon the individual's capacity to withstand pain and discomfort.

In resolution of the issue presented by this appeal, a review of decisions of this court in relationship to statutory law as it existed from time to time is in order.

In McNeil v. Panhandle Lumber Co., 34 Idaho 773, 203 P. 1068, decided in 1921, following the conclusion of the Massachusetts court in Madden's Case, 222 Mass. 487, 111 N.E. 379, L.R.A. 1916D, 1000, this court stated " * * * that our compensation law makes no distinction between wise and foolish, skilled and unskilled, healthy and unhealthy employees. All who are rightly described as 'workmen' or 'employees' come within the act." (34 Idaho at 793, 203 P. at 1075.) There the claimant, who had previously lost the use of one eye, was granted a specific indemnity based on permanent total disability, following the loss of his other eye in an industrial accident. The McNeil case was cited with approval in the case of In re Larson, 48 Idaho 136, 279 P. 1087 (1929), where the decedent employee suffered pre-existing latent heart defects. In the Larson case this court determined that as a result of the work performed, claimant's latent physical defect "was accelerated or aggravated and progressed farther" causing death, and reversed an order denying compensation, and directed that an award be made.

Hanson v. Independent School Dist. 11–J, 50 Idaho 81, 294 P. 513, decided in 1930, held that where a claimant was afflicted with a pre-existing disease, if such disease is aggravated by accident in the course of his employment, such claimant was entitled to recover. The case was remanded to the board to determine whether there was in fact an accident, and whether such accident did or did not proximately cause the injury. Therein this court stated:

"The presence of a previous disease or weakened condition is immaterial. If it should be determined that respondent's injuries resulted partly but not entirely from the alleged accident, it is the duty of the board to separate the results of the pre-existing disease or weakness from those of the alleged accident and injury

and apportion the award accordingly." 50 Idaho at 85, 294 P. at 514.

(See however, Hanson v. Independent School Dist. 11–J, 57 Idaho 297, 65 P.2d 733 (1937)).

The above quoted language from Hanson v. Independent School District, supra, was disapproved by this court the following year in Strouse v. Hercules Min. Co., 51 Idaho 7, 1 P.2d 203 (1931), wherein the court stated:

"Appellants cite Hanson v. Independent School Dist., * * *, to support a contention that, where a disability results partly but not entirely from an alleged accident, it is the duty of the board to separate the results of the pre-existing disease or weakness from those of the accident and apportion the award accordingly. This is not the rule in Idaho, but in Kentucky where a different statute prevails. C.S., § 6217 [now I.C. § 72–201], recognizes no such apportionment. Regardless of pre-existing conditions, if a workman's disability is precipitated by an accident arising out of his employment, which disability would in all probability not have arisen but for such accident, the statute contemplates full compensation. (McNeil v. Panhandle Lumber Co., 34 Idaho 773, 788, 203 P. 1068; In re Larson, 48 Idaho 136, 143, 279 P. 1087.)" 51 Idaho at 16, 1 P.2d at 206.

As to aggravation of a pre-existing disease, see Nistad v. Winton Lumber Co., 61 Idaho 1, 99 P.2d 52 (1939); Paull v. Preston Theatres Corp., 63 Idaho 594, 124 P.2d 562 (1942) and cases therein cited at 63 Idaho 606, 124 P.2d 567.

In 1940 this court in two cases, Young v. Herrington, 61 Idaho 183, 99 P.2d 441, and Hamlin v. University of Idaho, 61 Idaho 570, 104 P.2d 625, was again faced with the problem on apportionment of disabilities caused by previous injury and an industrial accident. In Young v. Herrington, supra, the no-apportionment rule was re-affirmed. There claimant had suffered an injury for which he received compensation for temporary partial disability. Claimant sought modification of the award,

claiming the injury aggravated and accelerated a tubercular condition of his spine, and also claiming permanent partial or total disability. The court after reviewing the record concluded the evidence disclosed his injury contributed to his total disability and reversed the board's determination, remanding the cause for determination of the extent of disability with directions to award compensation accordingly. In Hamlin v. University of Idaho, supra, the court affirmed an award to claimant who had a leg amputated. Claimant had slipped and suffered impairment in circulation in his leg, which the court found to be an industrial accident. In that case the court quoted from Young v. Herrington, supra, as follows:

" 'Where injury results partly from accident and partly from pre-existing disease it is compensable if the accident hastened or accelerated the ultimate result, and it is immaterial that the claimant would, even if the accident had not occurred, have become, totally disabled by the disease.' " 61 Idaho at 576, 104 P.2d at 627.

In 1941, the legislature enacted S.L.1941, Ch. 155, the forerunner of I.C. § 72–323, which as then enacted, provided:

"Except as provided in Section 43–1111 Idaho Code Annotated.

(a) If the degree or duration of disability resulting from an accident is increased or prolonged because of a pre-existing injury or infirmity the employer shall be liable only for the additional disability resulting from such accident.

(b) Any compensation previously paid an injured workman for permanent disability to any member or part of his body shall be deducted from the amount of compensation provided for the permanent disability to the same member or part of his body caused by a change in his physical condition or by a subsequent accident."

In Lay v. Idaho State School, 64 Idaho 455, 133 P.2d 923 (1943), a claimant was afforded hospitalization and compensation

for a compensable accident rupturing the length of a former appendectomy incision. His compensation had ended, and he sought additional compensation for permanent partial disability. The cause was remanded to afford claimant an opportunity to present additional medical testimony bearing on his claim of permanent partial disability. No mention was made in the opinion concerning S.L.1941, Ch. 155.

In Cole v. Fruitland Canning Assn., 64 Idaho 505, 134 P.2d 603 (1943), decided the same month as Lay v. Idaho State School, supra, this court held the provisions of S.L. 1941, Ch. 155, not subject to the attack made on its constitutionality, and affirmed the board's order denying claimant compensation. Claimant sought hospital and medical expenses and compensation for total temporary disability occasioned by removal of a cancerous kidney. This court sustained the board's finding that the removal of the kidney was immediately necessitated solely by the pre-existing malignancy, and that claimant's industrial injury had nothing to do with such necessity. So too, was the determination in Madariaga v. Delamar Mill. Corp., 64 Idaho 660, 135 P.2d 438 (1943), where this court affirmed a denial of death benefits for an employee's dependents where the board found that death was occasioned solely by a pre-existing cancerous condition.

In the case of Zipse v. Schmidt Bros., 66 Idaho 30, 154 P.2d 171 (1944), the claimant had received payments for total disability following an industrial accident which caused the breakdown of adhesions around the spinal column caused by osteoarthritis. The surety denied liability after making payments for about nine months, asserting the continuing total disability was caused by the pre-existing osteoarthritis. The board apportioned claimant's disability as being equivalent to eighty per cent of the loss of the leg at the hip. This court affirmed the award, stating:

> "It was incumbent upon the board, under the statute, to find somewhere in be-

tween the two extremes of entire or no causation, respectively, by the disease or accident, the apportionable compensable norm of respondent's complete disability." 66 Idaho at 35, 154 P.2d at 173.

In Walker v. Hogue, 67 Idaho 484, 185 P. 2d 708 (1947), a different issue on apportionment arose. There claimant suffered two different accidents involving the same part of his body, while covered by two different sureties. The sureties, respectively, compensated claimant for total temporary disability attributable to each accident. When claimant's condition worsened after the second accident, this court without mentioning I.C. § 72–323 (I.C.A. § 43–1123) affirmed the board's apportionment of total permanent disability between the two employers and their sureties on the basis that the causation of claimant's disability was a fact peculiarly for resolution by the board.

A case similar to Walker v. Hogue, supra, is Oliver v. Potlatch Forests, Inc., 73 Idaho 45, 245 P.2d 775 (1952), which involved apportionment of claimant's disability arising from two separate accidents while working for two different employers, with two different sureties. Again no mention was made of I.C. § 72–323 (I.C.A. § 43–1123).

In Harris v. Bechtel Corporation, 74 Idaho 308, 261 P.2d 818 (1953), claimant suffered two back injuries while working for the same employer. The record also showed that he had had previous difficulty with his back. This court affirmed an award to claimant for full temporary total disability for the five-week period following the first accident "aggravated by the accidental recurrence," and also for one-half of the compensation for a seven-week period, this being based on the finding that total disability resulting from the accident "complicated with preexisting infirmity" existed seven weeks. The board also awarded claimant all of his medical expenses and one-half of his hospitalization costs. This court affirmed this portion of the award, relying upon the board's finding that the treatment for the accidental compensable injury

had caused the "flare-up" of the pre-existing condition. The court stated:

"By § 72–323, I.C. the board is authorized and required to apportion the degree and duration of disability between the injury resulting from the accident and that resulting from any preexisting injury or infirmity. (citations). As recognized in the Cole case [Cole v. Fruitland Canning Assn., supra], this statute contemplates the apportionment of hospital and medical expenses as well as other forms of compensation." 74 Idaho at 313, 261 P.2d at 881.

In Beard v. Post Co., 82 Idaho 38, 348 P. 2d 939 (1960), claimant suffered from a pre-existing back infirmity. The board found claimant had also sustained three separate compensable accidents during employment, with employers insured by three separate sureties. The board's order required each respective surety to pay all medical and hospital expenses incurred following each of the respective accidents. Additional medical and hospital expenses, incurred two years following the last accident, were apportioned one-fourth to each surety and one-fourth to claimant. This court approved the award, except for one surety, it being determined that the evidence failed to support the board's finding that claimant had in fact suffered a third accident, and the award was reversed as to that surety.

Lindskog v. Rosebud Mines, Inc., 84 Idaho 160, 369 P.2d 580 (1962), involved successive back injuries to a claimant in covered employment. That case was actually a contest between two sureties. The first surety paid all temporary total disability and medical and hospital expenses following the first accident. Following the second accident, the board apportioned all elements of recovery (total temporary disability, medical expenses, and residual permanent partial disability) between the two sureties. As against the first surety's contention that all temporary total disability and hospital-medical expenses following the second accident should be borne by the second surety alone, the Supreme Court affirmed the apportionment made by the board, and specifically pointed out that the board in its findings determined claimant and his physician at the time of the second accident were considering a rehabilitative operation on account of the first accident.

Andrus v. Boise Fruit & Produce Co., 84 Idaho 245, 371 P.2d 256 (1962), also involved successive compensable back injuries to claimant. The board awarded total temporary disability and hospital-medical expenses following the second accident against the second surety. The record was recognized as being "far from satisfactory" insofar as the board's finding of a second accident is concerned, but nonetheless this finding was found sufficiently supported by the evidence. However, this court found no evidence tending to support or deny apportionment, which this court considered the principal issue presented to the board, and reversed and remanded the cause for the taking of further evidence on that issue.

Clark v. Brennan Const. Co., 84 Idaho 384, 372 P.2d 761 (1962), involved a claimant who suffered from a non-compensable pre-existing back injury, and two later back injuries involving two separate employers and their respective sureties. The board apportioned the total temporary disability following the second injury on the basis of fifty per cent to each employer and surety, and one-third of the hospital-medical expenses to each employer, with the remaining one-third of such expenses to the claimant, finding that it related to the pre-existing back infirmity. In this opinion the court recognized that presentation of evidence of the cause, origin and extent of disability was dependent upon skilled, professional witnesses and that it was within the province of the board to find the causes of disability and to apportion them as between an industrial injury and a pre-existing injury or infirmity as well as between successive industrial injuries.

Clevenger v. Potlatch Forests, Inc., 85 Idaho 193, 377 P.2d 794 (1963), did not involve a construction of I.C. § 72–323, but pointed to the responsibility of an employer

to an injured workman. Therein it was held that under the provisions of I.C. § 72–307, an employer is obligated to furnish an injured workman with reasonable medical, surgical or other treatment necessary so far as possible, to restore his health, usefulness and earning capacity. This court stated: "The nature or extent of disability is not determinative of an injured employee's right to the attendance provided for in said § 72–307, it is the necessity for such services that controls." (85 Idaho at 200, 377 P.2d at 798). This quoted statement, of necessity, must be considered in conjunction with the requirement that the necessity for treatment was related to a compensable accident.

■ In summary these various decisions lead to the conclusion that this court, prior to the enactment of S.L.1941, Ch. 155 (I.C. § 72–323) held there could be no apportionment of compensation as between industrial accident and pre-existing condition or disability. McNeil v. Panhandle Lumber Co., supra; Strouse v. Hercules Min. Co., supra; Nistad v. Winton Lumber Co., supra; Paull v. Preston Theatres Corp., supra. Subsequent to enactment of this provision this court has recognized that apportionment of compensation is to be made as between disability caused by or resulting from industrial accident and disability caused by or resulting from pre-existing injury, disease or condition residual from previous injury, and that the ratio of apportionment is for the board's determination. See: Cole v. Fruitland Canning Assn., supra, involving pre-existing cancerous kidney; Madariaga v. Delamar Mill. Corp., supra, involving death caused solely by pre-existing cancerous condition; Zipse v. Schmidt Bros., supra, involving determination of the cause and apportionment of partial-permanent disability as between disease and accident; Walker v. Hogue, and Oliver v. Potlatch Forests, Inc., supra, involving apportionment as between different sureties; Harris v. Bechtel Corporation, supra, involving pre-existing condition and two claimed back injuries, where the court affirmed an award of total temporary disability following an accident which aggravated the condition and apportioned subsequent compensation; Beard v. Post Co., supra, involving pre-existing back injury and three separate compensable accidents with three separate sureties, this court affirming an award requiring each surety to pay all medical expenses following each accident for which it was surety, but apportioned subsequent medical expenses; Lindskog, v. Rosebud Mines, Inc., supra, involving an apportionment between two sureties; Andrus v. Boise Fruit & Produce Co., supra, involving successive compensable back injuries, but insufficient evidence to apportion; Clark v. Brennan Const. Co., supra, involving pre-existing back injuries and two subsequent injuries.

In 1963, I.C. § 72–323 was again amended, S.L.1963, Ch. 277, authorizing reduction of benefits payable for death following an accident contributed to by a pre-existing condition or infirmity. Accord: Gjerning v. Potlatch Forests, Inc., 91 Idaho 15, 415 P. 2d 301 (1966); Hammond v. Kootenai County, 91 Idaho 208, 419 P.2d 209 (1966).

■ Another provision to be considered is I.C. § 72–307, enacted as a part of the original workmen's compensation law as S. L.1917, Ch. 81, which has never been subsequently amended. It provides in part:

"The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus, as may be required or requested by the employee *immediately after an injury, and for a reasonable time thereafter.*" (emphasis added).

The board in entering its "Interim Order" following the initial hearing, must have taken into consideration the provisions of I.C. § 72–307 and applied its provisions. In view of the record then before the board, this procedure reflects no reversible error. The order clearly indicates that the board was convinced that claimant had suffered an industrial accident and from this accident flowed the necessity for the hospital, medical and surgical treatment; there is no doubt that during that period claimant was

totally disabled for work although prior to the accident he was, notwithstanding the extreme dislocation of his femur and deterioration of the head of the femur, engaged in full-time employment.

██ The Idaho compensation law speaks in terms of "disability for work," not in terms of disability in the medical sense. I.C. §§ 72–310(a), 72–312. See: 2 Larson's Workmen's Compensation Law § 57.10.

██ The provisions of I.C. § 72–307, which provides that the furnishing of the medical, hospital and related expenses occasioned by an industrial accident shall continue "for a reasonable time thereafter," must be considered and correlated with the provisions of I.C. § 72–323, the first full paragraph of which reads:

> "If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity the employer shall be liable only for the additional disability resulting from such accident."

This latter provision must be considered complementary to I.C. § 72–307, which requires the furnishing of medical, hospital and related expenses for an injured employee—but only for a reasonable time after the injury, and in determination of the issue of what is a "reasonable time" thereunder consideration must be given to a pre-existing injury or infirmity as mentioned in I.C. § 72–323. See Cook v. Roland T. Romrell Company, 90 Idaho 155, 409 P.2d 104 (1965). It is therefore concluded the interim order must be affirmed.

██ Claimant, relying upon I.C. § 72–611, has petitioned this court for an allowance for attorney's fees in presenting his response to this appeal. Appellants have opposed claimant's petition and by affidavit in support thereof contend that reasonable grounds existed for their refusal to recognize Wilson's claim and for the prosecution of this appeal from the interim order of the board. Claimant also petitioned the board for allowance of attorney's fees. The board has not found or ruled upon that question as yet, reciting in the interim order "That claimant herein has petitioned the Board for allowance for attorney's fees, the disposition of said petition to be determined at the conclusion of this matter."

I.C. § 72–611, relied upon by claimant, provides for payment of reasonable attorney fees "[I]f the board or any court * * * determines that the employer or his surety contested a claim * * * without reasonable ground * * *." This portion of the section has been held to bar allowance of attorney fees as part of the costs if the employer's action in contesting the claim was not without reasonable grounds. Burch v. Potlatch Forests, Inc., 82 Idaho 323, 353 P. 2d 1076; Lane v. General Telephone Co. of Northwest, 85 Idaho 111, 376 P.2d 198. This section also provides for allowance of an attorney's fee "[I]f the board or any court determines * * * that an employer or the employer's surety *neglected* or *refused* within a reasonable time * * * to pay * * * the compensation provided by law." (emphasis added.)

There are no findings by the board on the issue whether appellants contested Wilson's claim "without reasonable ground" or on the issue whether appellants "neglected or refused within a reasonable time" to pay the compensation provided by law. Inasmuch as the interim order, which is the subject of this appeal, by its own terms contemplates further proceedings before the board, this court hereby refers the matter of the allowance of an attorney's fee in the premises, if any, to the board for determination, as a factual issue.

The interim order of the board is affirmed. The cause is remanded for further proceedings. Costs to claimant.

TAYLOR, C. J., and SMITH, McQUADE and SPEAR, JJ., concur.